**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| MARCUS A. DEVIN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 13-cv-09155 |
| | ) | Judge Charles R. Norgle, Sr. |
| LOYOLA UNIVERSITY CHICAGO, | ) | Magistrate Judge Mary M. Rowland |
| | ) | |
| Defendant. | ) | |

**DEFENDANT LOYOLA UNIVERSITY OF CHICAGO'S ANSWER TO PLAINTIFF'S COMPLAINT OF EMPLOYMENT DISCRIMINATION**

Defendant, Loyola University of Chicago ("Loyola"), by its attorneys, Meckler Bulger Tilson Marick & Pearson LLP, for its Answer to Plaintiff's Complaint of Employment Discrimination, states as follows:

1. This is an action for employment discrimination.

ANSWER: Loyola admits that Plaintiff purports to bring an action for employment discrimination, but denies it violated any law or committed any wrongdoing whatsoever.

2. The plaintiff is Marcus A. Devin of the County of Cook, in the State of Illinois.

ANSWER: Loyola admits the allegations of paragraph 2.

3. The defendant is Loyola University Chicago, whose street address is 820 N. Michigan Avenue, LT 750, Chicago, Cook County, Illinois 60611, Defendant's telephone number is (312) 915-6239.

ANSWER: Loyola admits that Plaintiff purports to bring an action against Loyola, that it has a place of business at 820 N. Michigan Avenue, Chicago, Cook County, Illinois 60611, and that the suite and telephone number contained in paragraph 3 are for Loyola's Office of the General Counsel.

4. The plaintiff sought employment or was employed by the defendant at 1032 W. Sheridan Rd., Chicago, Cook County, Illinois 60660.

ANSWER: Loyola admits the allegations of paragraph 4.

5. The plaintiff was employed but is no longer employed by the defendant.

ANSWER: Loyola admits the allegations of paragraph 5.

6. The defendant discriminated against the plaintiff on or about, or beginning on or about, February 1, 2013.

ANSWER: Loyola denies the allegations of paragraph 6.

7. The defendant is not a federal governmental agency, and the plaintiff has filed a charge or charges against the defendant asserting the acts of discrimination indicated in this complaint with any of the following government agencies:

(i) The United States Equal Employment Opportunity Commission on or about June 13th, 2013.

(ii) The Illinois Department of Human Rights, on or about November 1st, 2013.

A copy of the charge is attached. It is the policy of both the Equal Employment Opportunity Commission and the Illinois Department of Human Rights to cross-file with the other agency all charges received. The plaintiff has no reason to believe that this policy was not followed in this case.

ANSWER: Loyola admits it received notice of a charge of discrimination filed by Plaintiff with the United States Equal Employment Opportunity Commission ("EEOC") which was dated June 13, 2013, and that in or around November 2013 it received notice that the same charge was apparently filed by Plaintiff with the Illinois Department of Human Rights ("IDHR"). Loyola lacks knowledge or information sufficient to form a belief as to the truth of the allegation that it is the policy of both the EEOC and the Illinois DHR to cross-file with the other agency all charges received, and therefore denies it. Except as specifically admitted, Loyola denies the allegations of paragraph 7.

8. The United States Equal Employment Opportunity Commission has issued a *Notice of Right to Sue*, which was received by plaintiff on September 27th, 2013 a copy of which *Notice* is attached to this complaint.

ANSWER: Loyola admits that the EEOC has issued a Notice of Right to Sue. Except as specifically admitted, Loyola denies the allegations of paragraph 8.

9. The defendant discriminated against the plaintiff because of the plaintiff's disability (Americans with Disabilities Act or Rehabilitation Act).

ANSWER: Loyola denies the allegations of paragraph 9.

10. If the defendant is a state, county, municipal (city, town or village) or other local governmental agency, plaintiff further alleges discrimination on the basis of race, color, or national origin (42 U.S.C. § 1983).

ANSWER: Loyola is not a state, county, municipal or other local governmental agency and therefore the allegations of paragraph 10 are not applicable.

11. Jurisdiction over the statutory violation alleged is conferred as follows: For Title VII claims by 28 U.S.C. §1331, 28 U.S.C. §1343(a)(3), and 42 U.S.C. §2000e-5(f)(3); for 42 U.S.C. §1981 and §1983 by 42 U.S.C. §1988; for the A.D.E.A. by 42 U.S.C. §12117; for the Rehabilitation Act, 29 U.S.C. §791.

ANSWER: Loyola admits that this Court has jurisdiction over Plaintiff's claims pursuant to 28 U.S.C. §1331, 28 U.S.C. §1343(a)(3), and 42 U.S.C. §2000e-5(f)(3), but denies it committed any wrongdoing or violated any law whatsoever.

12. The defendant terminated the plaintiff's employment, failed to reasonably accommodate the plaintiff's disabilities and retaliated against the plaintiff because the plaintiff did something to assert rights protected by the laws identified in paragraphs 9 and 10 above.

ANSWER: Loyola admits that it terminated Plaintiff's employment. Except as specifically admitted, Loyola denies the allegations of paragraph 12.

13. The facts supporting the plaintiff's claim of discrimination are as follows: I have email conversations and other documents regarding my request for reasonable accommodation and the defendant not accommodating the request.

ANSWER: Loyola denies the allegations of paragraph 13.

14. [Age Discrimination Only]

ANSWER: Not Applicable.

15. The plaintiff demands that the case be tried by a jury.

ANSWER: Loyola admits that Plaintiff demands that the case be tried by a jury.

16. Therefore, the plaintiff asks that the court grant the following relief to the plaintiff: direct the defendant to re-employ the plaintiff; direct the defendant to reasonably accommodate the plaintiff's disabilities; if available, grant the plaintiff appropriate injunctive relief, lost wages, liquidated/double damages, front pay, compensatory damages, punitive damages, prejudgment interest, post-judgment interest, and costs, including reasonable attorney fees and expert witness fees; grant such other relief as the Court may find appropriate.

ANSWER: Loyola denies that Plaintiff is entitled to the relief requested or any other relief.

**ANSWER TO PLAINTIFF'S MORE DEFINITE STATEMENT (DKT 14)**

1. Mr. Devin was diagnosed with the following mental disorders by his psychiatrist Mandy Evans, MD.; Clinical Depression, Bi-Polar Disorder and Attention Deficit Hyperactivity Disorder (ADHD) on April 2011.

ANSWER: Loyola lacks knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 1, and therefore denies them.

2. Mr. Devin has also been under the care of counselor David Kessler, LPC for the same mental disorders.

ANSWER: Loyola admits that at some time during his employment, Plaintiff submitted information indicating he was under the care of counselor David Kessler, LPC. Except as specifically admitted, Loyola lacks knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 2, and therefore denies them.

3. Mr. Devin has suffered from depression most of his life and was first diagnosed with depression at the age of 8 in 1986. At the age of 8 Plaintiff was admitted for an approximately month long hospital stay for depression.

ANSWER: Loyola lacks knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 3, and therefore denies them.

4. In April 2011, while being employed by Loyola University Chicago, Mr. Devin was admitted in partial hospitalization from April 2011 to June 1, 2011 for mental health treatment.

ANSWER: Loyola admits that Plaintiff was employed by Loyola in April 2011. Except as specifically admitted, Loyola lacks knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 4, and therefore denies them.

5. Because of Mr. Devin's mental illness, he has difficulty caring for himself including not remembering to eat or perform basic menial life tasks; for example pay bills on time.

ANSWER: Loyola lacks knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 5, and therefore denies them.

6. Mr. Devin has difficulty learning because he has trouble sustaining attention on tasks.

ANSWER: Loyola admits that Plaintiff had difficulty sustaining attention on tasks during his employment. Except as specifically admitted, Loyola lacks knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 6, and therefore denies them.

7. Mr. Devin has difficulty sleeping in that he cannot sleep until 1 am or later most nights.

ANSWER: Loyola lacks knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 7, and therefore denies them.

8. Mr. Devin has difficulty communicating because of the neurological aspects of his disorders. Namely, he has a hard time switching between tasks and can become short and curt with others.

ANSWER: Loyola lacks knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 8, and therefore denies them.

9. Mr. Devin has difficulty maintaining normal human contact and communication resulting in isolation.

ANSWER: Loyola lacks knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 9, and therefore denies them.

10. Mr. Devin at times suffers severe depression bringing on feelings being hopeless and helpless leading to suicidal thoughts.

ANSWER: Loyola lacks knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 10, and therefore denies them.

11. Even while taking prescribed medication and engaging in weekly therapy, Mr. Devin still struggles with impairments due to his mental illnesses. Without both medication and weekly therapy it is likely that Mr. Devin's daily life would suffer substantially.

ANSWER: Loyola lacks knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 11, and therefore denies them.

12. Loyola University Chicago was made aware of the severity of Mr. Devin's conditions in April 2011 when the conditions caused him to take a FMLA covered medical leave to seek intensive treatment. The importance of regular therapy appointments was discussed with Human Resources upon his return to work.

ANSWER: Loyola admits that Plaintiff requested and was approved for covered leave under the Family and Medical Leave Act ("FMLA") and that part of that leave took place in April 2011. Loyola further admits that after his return from FMLA leave, Plaintiff stated to Loyola that he needed regular therapy appointments. Except as specifically admitted, Loyola denies the allegations of paragraph 12.

13. Loyola University Chicago was further informed of his disabilities when it requested and received ADA information from David Kessler on March 28, 2013, submitted to Gary Soltys.

ANSWER: Loyola admits that it requested and received information regarding Plaintiff from David Kessler. Loyola further admits that Mr. Kessler submitted some documentation to Human Resources Manager Gary Soltys on or about March 28, 2013. Except as specifically admitted, Loyola denies the allegations of paragraph 13.

14. Mr. Devin was granted a flexible work schedule from two previous department Chairs (Dr. Susana Cavallo & Dr. Wiley Feinstein) which allowed him to attend weekly therapy appointments and make up missed time due to his therapy appointments from May 2007 until June 2012.

ANSWER: Loyola admits that at least one previous department chair allowed Plaintiff to attend a weekly doctor's appointment scheduled by Plaintiff during working hours. Except as specifically admitted, Loyola denies the allegations of paragraph 14.

15. Neither Dr. Cavallo nor Dr. Feinstein requested formal documentation for this flexible schedule.

ANSWER: Loyola denies the allegations of paragraph 15.

16. In July 2012 Dr. Bernardita Llanos came on as department Chair. Initially Dr. Llanos allowed the flexible work schedule as it stood.

ANSWER: Loyola admits that Dr. Bernardita Llanos joined Loyola as department chair during 2012. Except as specifically admitted, Loyola denies the allegations of paragraph 16.

17. Shortly after, Dr. Llanos directly asked Mr. Devin what disorders he suffered from at a one on one meeting; which Mr. Devin shared.

ANSWER: Loyola lacks knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 17, and therefore denies them.

18. Dr. Llanos approved the flexible schedule for therapy. Mr. Devin also requested a change for a flexible start time. Dr. Llanos requested a letter from Mr. Devin's doctor before approval. This letter was submitted by Mr. Kessler and the flexible start time was approved.

ANSWER: Loyola admits that it continued to allow Plaintiff to attend self-scheduled doctor's appointments during work hours and that Plaintiff requested a flexible start time. Loyola admits that Dr. Llanos informed Plaintiff that he would have to support his request for a flexible start time with medical documentation. Loyola further admits that Mr. Kessler submitted a letter regarding Plaintiff's condition and that Loyola agreed to allow Plaintiff some flexibility in his start time. Except as specifically admitted, Loyola denies the allegations of paragraph 18.

19. There were no problems until January 2013. Around January 21 or 28 Dr. Llanos requested a meeting with Mr. Devin during the time that he would be out of the office for previously scheduled therapy. Mr. Devin let Dr. Llanos know he would be out for the office for his appointment and offered other meeting times. In Dr. Llanos' reply it appeared she did not remember about the weekly appointments. Mr. Devin reminded Dr. Llanos that these were the same appointments he had been going to since before she began. Shortly after, Mr. Devin received a request/notice to attend a meeting on 2/1/13 with a Human Resources representative and Dr. Llanos. Mr. Devin was not informed what the meeting would cover or asked to bring any information.

ANSWER: Loyola admits that on or about February 1, 2013, Plaintiff was requested to attend a meeting with a Human Resources representative and Dr. Llanos. Except as specifically admitted, Loyola denies the allegations of paragraph 19.

20. On 2/1/2013 Mr. Devin met with Gary Soltys, HR representative & Dr. Llanos. This meeting is where Mr. Devin alleges discrimination began. The main topic of the meeting was Mr. Devin's schedule. At the meeting Mr. Soltys informed Mr. Devin that Loyola University Chicago no longer recognized that Mr. Devin had a disability and that new documentation from his healthcare provider would need to be submitted. Mr. Devin was informed that his weekly appointments were no longer approved as part of a flexible work schedule. Instead, if Mr. Devin needed to attend the appointments he would need to use sick time. Mr. Devin's flexible start was no longer approved and would need documentation from his healthcare provider. After further discussion Mr. Soltys agreed the late start would be temporarily approved until documents were submitted. At this meeting, Mr. Devin requested that his reasonable accommodation continue.

ANSWER: Loyola admits that Plaintiff met with Human Resources Manager Gary Soltys and Dr. Llanos on February 1, 2013. Loyola further admits that during the meeting,

among other things, Plaintiff was told he would need to follow Loyola's process for requesting accommodations for disabilities. Loyola further admits that Mr. Soltys agreed that a flexible start time would be temporarily approved until documents were submitted. Except as specifically admitted, Loyola denies the allegations of paragraph 20.

21. At this meeting Mr. Devin was also informed his lunch hour would change from a time based on the needs of the department to a set time; this change also meant Mr. Devin could no longer take courses during his lunch which are part of his compensation package.

ANSWER: Loyola admits that it required Plaintiff to take his unpaid lunch break at a time that was based on the needs of the academic department in which he worked. Except as specifically admitted, Loyola denies the allegations of paragraph 21.

22. Prior to this meeting, Mr. Devin scheduled his lunch to accommodate the office by leaving only when student workers could keep the office open. This new lunch schedule at the set time of noon to 1:00pm required Mr. Devin to routinely close the office doors to student and professor clients in order to take lunch.

ANSWER: Loyola denies the allegations of paragraph 22.

23. Mr. Devin was allowed to continue to leave at 3:00pm on Tuesdays for his once a week, medically necessary mental health appointments. However, unlike before, he was not allowed to make up the work hours lost by attending his doctor appointments.

ANSWER: Loyola admits that Plaintiff was allowed to leave work at 3:00 p.m. on Tuesdays for the weekly doctor's appointment he scheduled during working hours. Except as specifically admitted, Loyola denies the allegations of paragraph 23.

24. Mr. Devin was forced to use sick time and not permitted to use additional hours to do work. Because of this, Mr. Devin effectively had at least two hours a week less time to work.

ANSWER: Loyola denies the allegations of paragraph 24.

25. At the same time, Mr. Devin was adding two additional job responsibilities to his already full workload. This included extensive work related to recruiting new hires and training a new undergraduate program director. In an attempt to meet the demanding work load, Mr. Devin requested permission to work the hours he missed out on due to his medically necessary doctor appointments.

ANSWER: Loyola lacks knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 25, and therefore denies them.

26. Mr. Soltys gave Mr. Devin a form labeled "Loyola Authorization for Release of Information & LUC ADA Authorization to Use and Disclose Protected Health Information" to fill out and return.

ANSWER: Loyola admits the allegations of paragraph 26.

27. Mr. Devin returned the "Loyola Authorization for Release of Information & LUC ADA Authorization to Use and Disclose Protected Health Information", after meeting and discussing it with Mr. Kessler, LPC, on 2/20/2013. After this point Mr. Soltys was in direct communication with Mr. Kessler, LPC. On 3/28/2013 Mr. Kessler, LPC, returned the requested documentation to Mr. Soltys. During that period and following Mr. Devin met in other meetings with Mr. Soltys and Dr. Llanos.

ANSWER: Loyola admits that Plaintiff returned the Loyola Authorization for Release of Information and LUC ADA Authorization to Use and Disclose Protected Health Information and that Mr. Soltys was in communication with Mr. Kessler. Loyola further admits that Mr. Kessler returned some documentation to Mr. Soltys on or about March 28, 2013. Except as specifically admitted, Loyola lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations of paragraph 27, and therefore denies them.

28. In these meetings and in emails Mr. Devin stated that his inability to make up the lost time for his appointments and late start were negatively affecting his work. Mr. Devin repeatedly requested to be able to work the normal number of hours of his position, which he had been able to do for the previous 6 years, but his requests were denied.

ANSWER: Loyola denies the allegations of paragraph 28.

29. After not receiving an update from Mr. Soltys, Mr. Devin requested an update. Initially, on 4/18/2013, Mr. Soltys states that he must meet with Dr. Llanos to review the documentation and that a meeting between the two will happen on 5/6/2013, over two weeks later. Mr. Devin then requests multiple times clarification on whether or not Loyola University Chicago recognizes his disability, or if he must provide more documentation.

ANSWER: Loyola admits that in April 2013 Plaintiff requested an update. Loyola further admits that Mr. Soltys informed Plaintiff that he would be meeting with Dr. Llanos on or

about May 6, 2013 to discuss possible accommodations based on the information received from Mr. Kessler. Loyola further admits that Plaintiff asked more than once for clarification on whether or not Loyola recognized his disability prior to the May 6, 2013 meeting he was aware was scheduled between Mr. Soltys and Dr. Llanos. Except as specifically admitted, Loyola denies the allegations of paragraph 29.

30. On 5/6/2013 Mr. Soltys replied stating the following "Regarding your current request to be informed if Loyola University Chicago now recognizes that you have a disability, I can respond that, after reviewing the information provided by Mr. Kessler, Loyola does not dispute that the conditions specified by Mr. Kessler, as your healthcare provider, would constitute a disability within the meaning of the ADA." After this Mr. Devin was informed that Mr. Soltys and Dr. Llanos will meet to discuss further action and then meet with him.

ANSWER: Loyola admits the allegations of paragraph 30.

31. No other meetings regarding his ADA accommodation request are ever held with Mr. Devin and no accommodations were granted.

ANSWER: Loyola admits that it did not hold any meetings with Plaintiff after May 6, 2013 regarding his ADA accommodation request. Except as specifically admitted, Loyola denies the allegations of paragraph 31.

32. Mr. Devin's reasonable accommodation request during this entire ordeal was simply to continue with the flexible work schedule that had been granted for the previous 6 years, which allowed him to perform the duties and responsibilities for which he was employed.

ANSWER: Loyola denies the allegations of paragraph 32.

33. On 6/7/2013 Mr. Devin was asked, via email, to a meeting with Mr. Soltys and Cheryl Sporlien. At this meeting Mr. Devin's employment at Loyola was terminated. The email notice of the termination meeting stated it was for "several performance concerns." Mr. Devin did not find allegations of sub-par performance surprising as he had himself brought up the issue of adding work hours to accommodate the work load.

ANSWER: Loyola admits the allegations of paragraph 33.

34. Mr. Devin was surprised to find out that this meeting was to discuss his termination. One of the key reasons for termination was Mr. Devin's performance. When Mr. Devin contested that his sub-par performance was directly linked to his inability to make up lost time, Mr. Soltys stated he did not see how they were linked.

ANSWER: Loyola admits that one of the reasons, among others, for Plaintiff's termination was work performance. Except as specifically admitted, Loyola denies the allegations of paragraph 34.

35. Mr. Devin was fully capable of performing his job duties with or without accommodation as evidenced by the fact that he completed his normal tasks for the previous 6 years and in the last months of employment, assisted with time consuming additional tasks of recruiting new professors and training a new undergraduate director.

ANSWER: Loyola denies the allegations of paragraph 35.

36. Any reason for alleged subpar performance related to Loyola not granting reasonable accommodations for his disability that would allow him to have a flexible work schedule to attend doctors appointments and make up lost time due to attending his weekly therapy appointments.

ANSWER: Loyola denies the allegations of paragraph 36.

37. While Loyola agreed to Mr. Devin's flexible work schedule to allow him to attend regularly scheduled doctor's appointments at the same time every week, they failed to allow him to make up those hours.

ANSWER: Loyola admits that it agreed to Plaintiff's flexible work schedule to allow him to attend doctor's appointments he scheduled during working hours. Except as specifically admitted, Loyola denies the allegations of paragraph 37.

38. Because of Mr. Devin's workload, he did not take vacations and was in fact maxed out on vacation, meaning he had accrued so much vacation without taking time off that he was losing accrued vacation days. Mr. Devin did not take vacations in order to continue to work during the busy academic years supporting 45-60 professors at one time.

ANSWER: Loyola admits that at times during his employment Plaintiff's vacation accrual approached the maximum amount allowed under Loyola's vacation time policy. Except as specifically admitted, Loyola denies the allegations of paragraph 38.

39. Mr. Devin alleges that he was discriminated against by Dr. Llanos, Mr. Soltys and Loyola University Chicago starting 2/1/2013. This discrimination resulted in a loss of work hours, inability to take vacation, overuse of sick time for therapy, and inability to take courses.

ANSWER: Loyola denies the allegations of paragraph 39.

40. The discrimination and lack of action in a reasonable about (sic) of time by Loyola University Chicago lead to an inhospitable and unrealistic work environment. Mr. Devin alleges that his request for a reasonable accommodation was not fulfilled because he was allowed to take off work hours for medical appointments but not allowed to work the requested extra hours to make up for lost time, making it impossible to perform the same amount of work and leading to a discriminatory effect.

ANSWER: Loyola admits that Plaintiff was allowed to take off work hours for medical appointments. Except as specifically admitted, Loyola denies the allegations of paragraph 40.

41. Specifically, Mr. Devin's reasonable accommodation request was not adequately addressed by Loyola University Chicago in that no interactive process occurred and Mr. Devin was retaliated against, by being terminated, for using his reasonable accommodation.

ANSWER: Loyola denies the allegations of paragraph 41.

42. He states that retaliation resulted in: 1) abnormal restrictions on time off (including forced lunch hours not benefiting the department and vacation), 2) poor performance reviews without taking into account the reasonable accommodation, work load, and forcibly shorter work week imposed by Loyola; and 3) eventually termination.

ANSWER: Loyola denies the allegations of paragraph 42.

## AFFIRMATIVE AND OTHER DEFENSES

1. The employment actions of which Plaintiff complains were based on legitimate, non-discriminatory, non-retaliatory, and non-pretextual business reasons.

2. Loyola has at all times acted in good faith in its dealings with Plaintiff and has not intentionally or willfully discriminated or retaliated against Plaintiff or breached any duty it had towards Plaintiff in violation of any federal or state statute or common law principle and, therefore, is not liable for injunctive, declaratory, compensatory or punitive damages or prejudgment interest, attorney's fees, expert witness fees, costs or expenses whatsoever.

3. Plaintiff's alleged causes of action do not state facts sufficient to enable Plaintiff to recover punitive damages.

4. In the exercise of reasonable care to ensure its employees are not subjected to unlawful discrimination, retaliation or other unlawful conduct, Loyola maintains a strict policy prohibiting impermissible discrimination or harassment of any kind in the workplace. The policy is written, posted online, and made available to all employees. While Loyola denies Plaintiff was subjected to any unlawful conduct, Plaintiff unreasonably failed to take advantage of Loyola's protective or corrective opportunities, or to otherwise avoid the alleged harm. Plaintiff is therefore barred from any recovery as against Loyola.

5. Any claim for back or front pay by Plaintiff must be reduced or denied due to or by reason of Plaintiff's interim earnings, by the amount he could have earned with reasonable diligence or by Plaintiff's failure or refusal to otherwise mitigate his claim of damages.

6. Loyola reserves the right to assert any additional defenses that may become relevant or apparent through the course of discovery or otherwise during the course of this litigation.

WHEREFORE, Defendant Loyola University of Chicago respectfully requests the Court to enter judgment in its favor and against Plaintiff on his claims, to award Loyola its attorney's fees and costs incurred in the defense of the litigation and to grant Loyola such other and further relief as the Court deems just and proper.

Respectfully submitted,

By: /s/ *Jenny Goltz*
One of the Attorneys for Defendant

Jeremy J. Glenn (IL Bar No. 6242988)
Jenny Goltz (IL Bar No. 6290036)
Meckler Bulger Tilson Marick & Pearson LLP
123 North Wacker Drive, Suite 1800
Chicago, IL 60606
312/474-7900
312/474-7898
jeremy.glenn@mbtlaw.com
jenny.goltz@mbtlaw.com
M:\16351\pleading\Loyola Devin Answer FINAL TO FILE.docx

**CERTIFICATE OF SERVICE**

I, Jenny Goltz, an attorney, state under oath that I caused a copy of the foregoing **Defendant Loyola University Of Chicago's Answer To Plaintiff's Complaint Of Employment Discrimination** to be electronically filed with the Clerk of the Court using the CM/ECF system. A copy of this filing was also served upon the following via U.S. Mail, first class postage prepaid, deposited before the hour of 5:00 p.m. on this 31st day of October, 2014.

Marcus A. Devin
3400 N. Halsted Street, #3
Chicago, IL 60657

*Jenny Goltz*
Jenny Goltz