6R

**IN THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF ILLINOIS EASTERN DIVISION**

| | | |
|---|---|---|
| MARCUS A. DEVIN, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 13-CV-9155 |
| | ) | |
| v. | ) | Hon. Charles R. Norgle |
| | ) | |
| LOYOLA UNIVERSITY OF CHICAGO, | ) | |
| | ) | |
| Defendant. | ) | |

## ORDER

Loyola University of Chicago's Motion for Summary Judgment [39] is granted.

## STATEMENT

Pro se Plaintiff Marcus A. Devin ("Plaintiff") sues his former employer, Defendant Loyola University of Chicago ("Defendant") for allegedly violating Title I of the Americans with Disabilities Act, 42 U.S.C. §§ 12111 *et seq.* ("ADA"). Currently before the Court is Defendant's motion for summary judgment, filed pursuant to Federal Rule of Civil Procedure 56. For the following reasons, Defendant's motion is granted.

"Summary judgment is appropriate when 'the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" Northfield Ins. Co. v. City of Waukegan, 701 F.3d 1124, 1128 (7th Cir. 2012) (quoting Fed. R. Civ. P. 56(a)); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). "A genuine issue of material fact exists when the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Wells v. Coker, 707 F.3d 756, 760 (7th Cir. 2013) (internal quotation marks and citation omitted). "On summary judgment a court may not make credibility determinations, weigh the evidence, or decide which inferences to draw from the facts; these are jobs for a factfinder." Payne v. Pauley, 337 F.3d 767, 770 (7th Cir. 2003) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986)).

In its trilogy of opinions discussing the summary judgment standard, the Supreme Court held that the onus is on the non-moving party to produce admissible evidence to demonstrate a genuine issue of material fact, not on the moving party to give evidence that there is no factual dispute. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 588 (1986) (requiring non-moving party to produce positive evidence of an essential element of the claim to survive summary judgment); Anderson, 477 U.S. at 249 ("[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party."); Celotex, 477 U.S. at 322-23 ("[T]he plain language of Rule 56(c) mandates the entry of summary judgment, . . . against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."). Or, as the Seventh Circuit succinctly stated, "summary judgment is the

'put up or shut up' moment in a lawsuit." See Siegel v. Shell Oil Co., 612 F.3d 932, 937 (7th Cir. 2010).

The Court strikes from the following recital all facts and responses that do not comply with Local Rule 56.1. See Petty v. City of Chicago, 754 F.3d 416, 420 (7th Cir. 2014) (holding that district court did not abuse its discretion in striking fact statements that did not comply with the Local Rules). From October 2005 until his termination in June 2013, Plaintiff was the Administrative Assistant to the Modern Languages and Literatures Department (the "Department") of Loyola University's College of Arts and Sciences. Plaintiff's job required him to open the Department's office every morning and otherwise act as the Department's representative to students, extra-departmental faculty and administrators, and the general public. Because Plaintiff was the Department's administrator, he was required to exhibit high levels of attention to detail and organization to facilitate the smooth operation of the Department. As Plaintiff was frequently the only staff person in the office, he was required to be at the Department's office from 8:30 a.m.—when the office opened—until 5:00 p.m., excluding an hour-long break for lunch from Noon until 1:00 p.m. Plaintiff reported directly to the Department's Chair.

Throughout his employment, Plaintiff's supervisors repeatedly noted his tardiness on his performance evaluations. Then, in March 2011, Plaintiff went on medical leave after he was partially hospitalized for "depression and [a] near-breakdown." Def. Loyola Univ. Chi.'s R. 56.1(a)(3) Statement Undisputed Material Facts ¶ 24 [hereinafter "DSOF"]. When Plaintiff returned to work, his supervisor, Dr. Wiley Feinstein ("Dr. Feinstein"), agreed to accommodate his request to work only six hours a day.

On or about July 1, 2012, Dr. Bernardita Llanos ("Dr. Llanos") replaced Dr. Feinstein as the Department's Chair. While Dr. Llanos continued Dr. Feinstein's policy of allowing Plaintiff to attend doctors' appointments, she became concerned with Plaintiff's punctuality shortly after becoming Chair. In response to Plaintiff's scheduling issues, Dr. Llanos asked Plaintiff if there was some reason why Plaintiff could not keep his required schedule of 8:30 a.m. to 5:00 p.m.

Plaintiff then sent Dr. Llanos a "flexible work schedule request," which detailed his request for a modified work schedule. DSOF ¶¶ 29, 31. In his request, Plaintiff asked for an "'adjusted schedule' of 9:00 or 9:15 a.m. to 5:30 p.m. 'to accommodate personal issues and situations." Id. ¶ 32. In line with his request, Plaintiff also asked for the Department to provide a student employee who would be able to open the Department in Plaintiff's place. On July 31, 2012, after receiving the request, Dr. Llanos asked Plaintiff for medical documentation to substantiate his request. Plaintiff met with her, and told her that he was suffering from depression, attention deficit hyperactivity disorder, and bipolar disorder, all of which caused sleep problems and prevented him from timely arriving at work. Dr. Llanos asked again for medical records, which Plaintiff produced on or about September 18, 2012.

Among the records produced was a report from Plaintiff's therapist, David Kessler ("Kessler"). Kessler conveyed that although Plaintiff was still adjusting his sleep cycle to accommodate his recent diagnoses, "Marcus knows he needs to get to work earlier and is not seeking to adjust his schedule." DSOF ¶ 36. Nonetheless, Dr. Llanos allowed Plaintiff to arrive at work up to thirty minutes after his shift formally started. In further efforts to accommodate Plaintiff, Dr. Llanos began meeting with Plaintiff on a weekly basis to discuss and prioritize his job tasks.

Despite these accommodations, Plaintiff continued to report to work in an untimely manner. For example, in January 2013, Plaintiff arrived after 9:00 a.m. on seventeen of the

twenty work days for that month, and arrived after 10:00 on several of those days. The undisputed facts show that he left at improper times at well, ranging anywhere from 3:00 until 7:30 p.m. While Plaintiff was arriving late and leaving his job early, his job performance continued to decline; Defendant notes several examples where Plaintiff failed to use the high levels of critical examination required for his job.

Plaintiff's continual tardiness and decreasing job performance led Defendant to issue an oral warning to Plaintiff on February 1, 2013. Within the warning, Plaintiff was reminded about his job expectations and expected work hours. But Plaintiff did not change his behavior. He continued to arrive late, leave early, and generally did not discharge his duties as the Department's administrator. Plaintiff's diminished job performance continued into May 2013. From February to May 2013, Dr. Llanos and Defendant's human resources staff met with Kessler to attempt to accommodate Plaintiff in a manner responsive to his disabilities.

On Monday, May 20, 2013, Dr. Llanos traveled to Chile for one week on bereavement leave. Over the course of the same week, Defendant's time clock reflected that Plaintiff arrived after 11:00 a.m. on Monday, after 10:40 a.m. on Tuesday, and after 10:40 a.m. on Wednesday. Although Plaintiff arrived before 10:30 a.m. on Thursday, he left at 1:00, and did not go to work at all on Friday, May 24. Monday, May 27 was Memorial Day and Plaintiff was not required to be at work; Plaintiff was absent from work again on Tuesday, May 28. Dr. Llanos came back to work on that day, noticed that Plaintiff was not at work, and that there was a sign on the door that stated that the office would be closed until May 29, 2013.

Dr. Llanos called Plaintiff, who told her that he had previously sent her vacation requests on April 3, 2013, and that she did not disapprove them. Dr. Llanos reminded Plaintiff that permission is a positive requirement—that is, Plaintiff cannot take vacation unless he receives permission. Subsequent to this exchange, Dr. Llanos discovered that Plaintiff had requested vacation starting the following week on May 31, 2013, not May 24, as he had originally represented.

Prompted by Plaintiff's latest instance of misconduct, Dr. Llanos assembled a comprehensive list of Plaintiff's misconduct that had occurred from the time Dr. Llanos became Chair of the Department until the present. Dr. Llanos then met with Plaintiff and Defendant's human resources manager, Gary Soltys ("Soltys") on June 7, 2013. At that meeting, Dr. Llanos and Soltys reviewed Plaintiff's behavior with Plaintiff, and outlined his continued deficiencies that were related to his inability to discharge his work functions and to arrive at work within the specified time frame. At the end of the meeting, Soltys informed Plaintiff that he would be suspended "for his tardiness, attendance and performance issues," and that his employment would be terminated because he took "two unauthorized vacation days and clos[ed] the Department office without permission." DSOF ¶ 70. Plaintiff's termination became final on July 3, 2013.

Plaintiff first brought his dispute before the United States Equal Employment Opportunity Commission; he received his right to sue letter on September 27, 2013. On December 23, 2013, Plaintiff filed his Complaint in this Court. Discovery has concluded, and Defendant now moves for summary judgment. The Court notes that Plaintiff moved for additional time to respond to Defendant's motion on three separate occasions, December 15, 2015; February 2, 2016; and March 16, 2016. The Court granted each of these motions. While Plaintiff's final response was due on April 1, 2016, he failed to respond to Defendant's motion.

In order to survive summary judgment for a failure-to-accommodate claim, Plaintiff must show sufficient facts to enable a reasonable jury to find that (1) Plaintiff was a qualified

individual with a disability, (2) Defendant was aware of his disability, and (3) Defendant failed to accommodate Plaintiff's disability. See 42 U.S.C. § 12112(a); see also Kotwica v. Rose Packing Co., Inc., 637 F.3d 744, 747–48 (7th Cir. 2011) (quoting EEOC v. Sears, Roebuck & Co., 417 F.3d 789, 797 (7th Cir. 2005)). In its motion, Defendant argues that it is entitled to summary judgment because Plaintiff cannot prove that he was a qualified individual with a disability.

Under the ADA, an individual is "qualified" if he "can perform the essential functions of the employment position that such individual holds or desires," with or without reasonable accommodation. See 42 U.S.C. § 12111(8). "An employer is generally permitted to treat regular attendance as an essential job requirement and need not accommodate erratic or unreliable attendance." Basden v. Prof'l Transp., Inc., 714 F.3d 1034, 1037 (7th Cir. 2013) (citing EEOC v. Yellow Freight Sys., Inc., 253 F.3d 943, 948-49 (7th Cir. 2001)).

Here, the undisputed facts show that one of the essential functions of Plaintiff's position was that he open and close the office on a daily basis. This duty required Plaintiff to arrive at work and leave on time, every day. The facts also show that Plaintiff was unable to discharge the timely-arrival aspect of his job function. Plaintiff habitually arrived more than thirty minutes late—occasionally arriving more than three hours late—and would leave early. Even when his supervisor accommodated this deficiency and allowed Plaintiff to arrive up to one half-hour later, around 9:00 a.m., Plaintiff was unable to come to work when he was required. Exasperated, Dr. Llanos met with Plaintiff to improve his timeliness and general organization; Plaintiff did not improve. After five months of tardiness and poor work performance, Dr. Llanos and her supervisors became frustrated with Plaintiff's inability to arrive at work on time. The final straw came when Plaintiff disappeared from the Department—closing its doors—for nearly one week without permission.

Thus, Plaintiff was unable to do his job, with or without help from his supervisors, and Defendant properly and lawfully terminated his employment after it felt it could do nothing further to improve his job performance. Further, Plaintiff has not provided admissible evidence sufficient to rebut Defendant's version of the events leading to Plaintiff's termination and create a genuine issue of material fact. The Court finds that no reasonable jury could conclude that Plaintiff could perform the essential functions of his employment position. Accordingly, the Court grants summary judgment in favor of Defendant.

IT IS SO ORDERED.

ENTER:

Charles Norgle

CHARLES RONALD NORGLE, Judge
United States District Court

DATE: May 5, 2016